UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK R. AMUNDSEN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | No. 2:18-cv-00959 CKD<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1959, applied for Title II disability insurance benefits on September 5, 2014, alleging disability beginning October 30, 2010. Administrative Transcript ("AT") 16, 151-152. His date last insured was June 30, 2013. AT 21. Plaintiff alleged he was unable to work due to demyelinating polyneuropathy, severe whole body fatigue, burning pain in bottom of both

1

feet, occasional numbness in feet and legs, muscle weakness in legs, lower back pain, osteoarthritis in left hip, severe muscle weakness in lower extremities, impaired balance and difficulty walking (use of a cane), some long-term memory issues, and an inability to stand/sit for more than two hours. AT 170. In a decision dated January 25, 2017, the ALJ determined that plaintiff was not disabled.[1] AT 16-25. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2013.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 30, 2010 through his date last insured of June 30, 2013.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

3. The claimant has the following severe impairments: peripheral neuropathy and osteoarthritis.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work, except the claimant could sit for six hours in an eight hour workday; could stand and/or walk for two hours in an eight hour workday; required use of a cane while standing and walking; could not climb, crouch, or crawl; could occasionally stoop, bend, balance, and kneel; and had to avoid exposure to vibrations, temperature extremes, and humidity.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on XX/XX/1959, and was 53 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.

8. The claimant has at least a high-school education and is able to communicate in English.

9. The claimant has acquired work skills from past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 30, 2010, the alleged onset date, through June 30, 2013, the date last insured.

AT 18-25.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly discounted the opinion of treating physician Dr. Baquero; (2) the ALJ improperly discounted plaintiff's credibility; and (3) the decision's residual functional capacity (RFC) was not supported by substantial evidence.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Before turning to plaintiff's claims, the court notes the following background facts:

Beginning in 1985, plaintiff worked for 18 years as a technical consultant for a company called Integraph, which contracted him out to state and federal agencies as a network or server administrator. AT 39, 171. In 2003, Integraph became a software company and plaintiff was laid off. AT 39. Between 2006 and 2010, plaintiff worked for two different state agencies as a systems analyst. AT 171. At the California Department of Fish and Game, plaintiff testified, he was responsible for maintaining the Sacramento-area computer networks, including "all the wireless infrastructure for use with laptops," and also had duties concerning the agency's uninterruptable power supply hardware at multiple locations. AT 36-37.

4

Plaintiff testified that, one day in October 2010, when he was "about two months away from vesting" in the state's retirement system, he "woke up and found that my legs had basically stopped working. They felt like I had run a couple of marathons and then played some football on them." AT 34. Plaintiff testified that he called in sick for a few days to see doctors, and never fully returned to work after that. AT 34-35.

### A. Medical Opinions

Plaintiff asserts that the ALJ wrongly discounted the opinion of treating physician Dr. Baquero, who indicated that plaintiff could only sit or stand for 30 minutes at a time, among other limitations.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a

treating or examining professional. Lester, 81 F.3d at 831.

The ALJ assigned partial weight to the opinions of State Agency medical consultants Dr. A. Wong and Dr. S. Kotak. AT 22. Having reviewed plaintiff's medical records in November 2014, Dr. Wong opined that plaintiff could stand and/or walk for a total of two hours in an eight hour workday; could sit for a total of six hours[2] in an eight hour workday, and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, among other restrictions. AT 22, citing AT 65-67. Similarly, having reviewed plaintiff's medical history in March 2015, Dr. Kotak opined that plaintiff could stand and/or walk for a total of two hours in an eight-hour workday; could sit for a total of six hours in an eight hour workday, and frequently climb ramps or stairs, stoop, and kneel, among other restrictions.[3] AT 22, citing AT 75-77.

The ALJ acknowledged that Dr. Wong and Dr. Kotak were non-examining sources, but found that their "assessments are supported by a detailed explanation, rationale, and analysis of the medical evidence record." AT 22. "Viewing the evidence in the light most favorable to the claimant," the ALJ continued, "I find additional limitations (e.g., use of a cane to stand and/or ambulate) to be reasonable." AT 22-23.

The ALJ assigned little weight to the May 2015 opinion of treating physician Dr. Victor Baquero, who opined that plaintiff could stand for 30 minutes at a time, walk for 15 minutes at a time, sit for 30 minutes at a time, and stand or walk for one hour total, among other limitations. AT 23, 457-458. The ALJ explained that Dr. Baquero's assessment "was made approximately two years after the applicable period and, therefore, has little probative value concerning the claimant's limitations during the adjudicatory period." AT 23. The ALJ continued:

////

---

[2] While Dr. Wong indicated on the form that plaintiff could stand/walk for *six* hours and sit for *two* hours, defendant characterizes this as a typographical error, as Dr. Wong apparently transposed her sitting and walking/standing limitations. (ECF No. 16 at 6, n.1.) See AT 66.

[3] Plaintiff points out that Dr. Wong's report includes the statement: "Given the evidence, [claimant] has a sedentary RFC." AT 64. Moreover, Dr. Kotak's report notes that Dr. Wong indicated a "sed[entary] RFC," but that the opined limitations "actually equate[] to a Light RFC." AT 73.

> The assessment is somewhat vague in its restrictions. Dr. Baquero apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

AT 23.

Overall, the ALJ relied on the two nonexamining opinions in formulating the RFC, noting: "[T]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or has limitations greater than those determined in this decision during the adjudicatory period." AT 23.

Plaintiff argues that the ALJ failed to give specific and legitimate reasons for discounting Dr. Baquero's 2015 assessment. As to the first stated reason -- that the assessment was made two years after the date last insured (DLI) and was therefore of limited probative value – plaintiff points out that both State Agency consultants' findings were made after the June 2013 DLI. Dr. Wong's opinion issued in November 2014, and Dr. Kotak's in March 2015, only two months prior to Dr. Baquero's. Yet the ALJ credited these opinions, both rendered after the alleged disability period and within six months of Dr Baquero's opinion. Unlike the nonexamining consultants, Dr. Baquero had a treating relationship with plaintiff dating back to November 2, 2010, just after the alleged onset date. AT 247; see also AT 230-231, 356-357, 376-377 (appointments with Dr. Baquero in 2011, 2012, and 2013). Thus the date of Dr. Baquero's opinion, without more, is a dubious reason for discounting it.

The ALJ next stated: "The assessment is somewhat vague in its restrictions." AT 23. However, Dr. Baquero filled out a questionnaire as to plaintiff's "ability to do work-related activities (physical)," and answered almost all of its questions. AT 457-458. He indicated that plaintiff could occasionally lift 10-20 pounds; and that the medical findings supporting this assessment were "pain/neuropathy." AT 457. Dr. Baquero further indicated that plaintiff's standing/walking were affected, that he "uses a cane," and that the medical findings supporting this assessment were "hip pain, neuropathy of lower extremities, fatigue is also a factor." AT 457. Dr. Baquero noted that plaintiff's sitting was affected by "pain all the time in the joints," such that he could only sit without interruption for 30 minutes. AT 457. He attributed specific

limitations in postural activities to "neuropathy, hip pain, limits activities/functions. Cane is used for balance." AT 458. Like the opinion's timing, its purported vagueness is a poor reason for discounting it.

The third factor cited by the ALJ – Dr. Baquero's apparent reliance on plaintiff's subjective reports – is closely related to the ALJ's credibility determination. As discussed below, the ALJ gave legally sufficient reasons for discounting plaintiff's credibility as to the severity of his symptoms. Aside from plaintiff's self-reports, there is no apparent basis for the severe limitations opined by Dr. Baquero; in fact, plaintiff's exam findings were consistently normal or mild, as noted below. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected). Thus the court finds no reversible error on this basis.

B. Credibility

Plaintiff asserts that the ALJ improperly discounted plaintiff's credibility.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ discussed plaintiff's credibility at length, stating: "The objective medical evidence does not support the severity of pain or the limitations alleged." AT 21. The decision continued:

> The claimant's allegations are generally inconsistent with the medical observations. The claimant ambulated using a cane. He exhibited an antalgic and/or slowed gait. He also exhibited reduced reflexes and decreased sensory perception at times. However, the claimant consistently exhibited normal muscle strength [record citations]. He consistently had normal muscle tone [record citations]. He was able to heel toe walk [record citation]. The claimant exhibited normal range of motion [record citation]. He also generally exhibited normal reflexes and intact sensory perception [record citations].
>
> . . .
>
> The claimant's treating sources repeatedly noted that the claimant's symptoms did not fully correspond with the objective findings. As discussed above, the claimant admitted to improvement with treatment (e.g., being more physically active and experiencing less fatigue). The claimant's allegations are generally inconsistent with the medical observations. Although the claimant testified that he spent 21 hours a day in bed, no physician, treating or otherwise, has indicated that there is any medical reason why the claimant's activities would have been so limited.

AT 21-22 (record citations omitted).

Defendant points out that, when Dr. Baquero examined plaintiff days after the alleged onset date, plaintiff exhibited a normal gait. AT 248. In March 2011, examining physician Dr. Andrew Kim Oh noted: "The abnormalities he displays when walking are out of proportion to any muscle weakness demonstrated on individual muscle strength testing. His reflexes are also normal. . . . His workup so far has not revealed an obvious cause." AT 237, 242. In August 2011, examining neurologist Dr. David Richman wrote to Dr. Baquero that plaintiff's "motor exam [was] completely normal" and that plaintiff's gait disorder "seems to be somewhat out of proportion to the findings on his exam and on his electrodiagnostic studies. Most of his disability appears to relate to his bilateral hip disease (with relatively recent left hip replacement and severe arthritis in the right hip). . . It is very unlikely that we are dealing with chronic inflammatory demyelinating polyneuropathy." AT 380. In September 2011, Dr. Richman wrote that plaintiff had "very mild motor-sensory mixed neuropathy" and that a motor examination revealed "normal bulk, tone, and strength throughout with some occasional give-away weakness." AT 378. In an April 2013 physical examination, plaintiff had normal muscle tone and muscle strength, and his pain was noted to "have shown great improvement" with medication. AT 361; see also AT 350 (April 2013 medical note that plaintiff's lower-limb pain was improving with medication). Also that month, he reported that he was exercising daily with no new weakness or numbness. AT 349. The ALJ's decision noted that, per his testimony, plaintiff "was able to perform his personal care, prepare meals, and to feed himself." AT 20. Plaintiff also testified that he usually did his own grocery shopping and laundry. AT 43, 47.

Having reviewed the objective medical evidence and other factors, including plaintiff's apparent improvement with treatment, the undersigned concludes that the ALJ provided legally sufficient reasons for not fully crediting plaintiff's subjective complaints.

    C. Residual Functional Capacity

Plaintiff next asserts that the RFC for light work is erroneous; rather, it should have been for sedentary work, especially given plaintiff's need for a cane to ambulate.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person

"can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

The governing regulation defines "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, <u>a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls</u>. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added).

Here, the ALJ determined that plaintiff's "additional limitations did not allow [him] to perform the full range of light work[.]" AT 25. The vocational expert (VE) testified that a person with plaintiff's RFC could perform "light duty occupations . . . that essentially can be performed in a sitting posture." AT 50. The ALJ questioned the VE as follows:

> Q: Now I have one more hypothetical for you. Assume that this same hypothetical individual at the light level, with all the limitations I've described, . . . further must use a cane while standing and walking . . . are there any light or sedentary occupations that this hypothetical individual could perform?
>
> A: Your honor, the three job titles I gave to you at the semi-skilled level are essentially bench type positions. Once you get to your workbench, you can sit, and I'm giving you information now, Your Honor, based on my observing those types of jobs being performed. . . . Once you're at your workbench, you're able to sit there and do those, those job duties, Your Honor. Therefore, the use of a cane to ambulate to and from would not be a hindrance to perform those jobs.
>
> Q: Okay, thank you. So, you think that that person could work as

an electronic assembler, electronic inspector, or electronics tester?

A: Yes, Your Honor.

AT 53-54.

In his decision, the ALJ found based on VE testimony that those jobs existed in significant numbers in the national economy. AT 25. The ALJ determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles "except for the requirement of the use of a cane in an electronics job setting, which the vocational expert based on his professional experience placing people in jobs." AT 25. The ALJ concluded that, while plaintiff could not perform the full range of light work, a finding of "not disabled" was appropriate. AT 25.

For the reasons discussed above, the court concludes that plaintiff's assessed RFC was adequately explained and grounded in substantial evidence. In addition, the ALJ "properly relied on the VE's testimony because the hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible – including [the claimant's] additional stand or walk limitation." Avilez v. Berryhill, 677 Fed. Appx. 373, 374 (9th Cir. 2017), citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). "Moreover, the VE based his uncontradicted opinion on . . . years of experience, knowledge of characteristics, and requirements of jobs in the local area, and review of the evidence." Id. The undersigned finds no error on this basis.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

3. Judgment is entered for the Commissioner.

Dated: July 30, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/amundsen0959.ssi.ckd